Good morning, Your Honors. May it please the Court. My name is Katie Lane, and I'm appearing today on behalf of the petitioner, Mr. Jing Hai Li, who is a native of China. Good morning. Good morning. Today we would like to raise two main issues. Mainly, both of these issues go to the credibility of the petitioner, which in our view is the key issue here, because there's no objection by the government that Falun Gong practitioners are entitled to relief under the Convention Against Torture, under withholding of removal under the INA, and on the basis of asylum. However, on this record, it is clear that there was an issue with respect to credibility. I would submit that the two issues that go to this pivotal point are, number one, the outrageous conduct of the petitioner's second attorney below, who made a revelation to the immigration judge that there was some sort of representation to her office that the petitioner had lied on his asylum application. Well, you know, the problem with saying that's outrageous, if you put yourself in the position of a lawyer, that attorney did everything she could to remove herself from the case, and the judges kept saying, no, no, no, no, you've got to present this guy's testimony. And she finally, I think in a kind of desperation, maybe she shouldn't have done it, but she wasn't really being very outrageous when she says, look, I just can't do it. And then he let her go, which was the appropriate thing for her client, the way she felt, which is really an appropriate result. What's outrageous about that? Well, Your Honor, the immigration judge gave great weight to that attorney's testimony, if you will, on the record that the petitioner had lied on his asylum application moments after the attorney herself misrepresented to the court the basis for her withdrawal. Well, I think that you have, I mean, obviously we have to review it on the basis of the reasons that were given for the adverse credibility and see if they withstand scrutiny. But I have to agree with Judge Fernandez in the sense that I'm sure that you're aware that attorneys cannot suborn perjury. And when their clients tell them that they're going to lie, if they suborn perjury, then they can be removed from the bar. And so the appropriate, and you may not be aware of this, but those of us that have been trial judges, it's not uncommon, I mean, it doesn't happen a lot, but it isn't unheard of that attorneys will say, Your Honor, I need to withdraw because of subornation or perjury issue. And you appoint someone else and you move on. So I think that that, you know, but in terms of you've sort of got basically you've got the three things. You've got the full on gong, whether it was speculation in terms of because your client didn't know, you know, he couldn't answer many of the questions. Then you have the discrepancy in the time that he was imprisoned. And then you have the master, whether he actually talked to the master as far as that goes. So, I mean, I think you're better spent spending your time on that. Yes, Your Honor. I'll address those discrepancies as well. And Your Honor, to go to my second point that I was going to make, there's a problem with this record below. I mean, this judge was aware that he may need to recuse himself. At that point in time, he made the decision to remain on the case. He made a finding that he wasn't personally prejudiced. But as Your Honors point out, it's imperative for a court to listen to counsel for anybody, for a client who is making some sort of representation that there could be perjury on the record. That our judge below here did consider that and gave great weight to that, even if he does allege in the opinion, the oral opinion. Well, I think if, you know, honestly, I mean, these sort of things, you know, judges have to very frequently, you hear motions about people's priors and then you say they can't come in. And you've just got to move on and you do, you know, that's what judges have to do. I think your best argument, for me, that you would convince me, and honestly, if it weren't for Ninth Circuit precedent, I don't think your client is very believable. I'll say that. Your Honor. But there's Ninth Circuit precedent out there that we've got to deal with that may, in my mind, compel me to vote for a grant. And I'm going to ask the other side about it in terms of that, you know. And so I think that's, you need to focus on what's the Ninth Circuit precedent that would knock these adverse credibility findings out. Well, Your Honor, as you point out, there is a lot of precedent in this circuit that says that the court, if it is, there's an exception to the general rule of personal bias. And it says that that exception states that if the record reflects that there's pervasive bias on the part of the judge, even if it's not a personal prejudice from outside of the record. You're missing my point. You've used up more than five minutes of your time, and you still don't want to talk about the merits. Why don't you talk about the merits instead of bad-mouthing people? Talk about the merits of this case. Talk about what Judge Callahan is trying to get you to talk about. If you have any point to make about that. Yes, Your Honor. Additionally, well, Your Honor, I want to state that the judge went beyond the record in this case. Well, here, let me help you out. There's a couple of cases that I think, first off, the full-on gong, that we have to recognize that as a group. So we have precedent to that effect, even though, you know, I would personally say that, well, why isn't doing yoga or something like that? But nevertheless, you're over that hurdle. The next is that there's a Ninth Circuit case, I want to say, that talks about, that I think are much more egregious facts than yours, in a discrepancy that said it was a minor discrepancy. Yes, Your Honor. And even though, think of, what is it? Delorio, I think it was. Yeah, Delorio Lopez. Yes, Your Honor. Any discrepancy in the record must go to the heart of the petitioner's claim. Well, why doesn't, I mean, there were two discrepancies, at least, that went to the heart of the claim. One was whether Master Lee had spoken to him or not. And the second was the discrepancy for the length of time he was in police custody, which was 11 days or three weeks. And so if even one of these is a discrepancy, that would be enough to support the adverse credibility finding, unless it's a minor inconsistency. So how do we tell the difference between a minor inconsistency and a significant one? And why are these discrepancies minor and not significant? Well, Your Honor, initially, the petitioner in his written testimony, which was translated from the Mandarin to English, states that he was detained for three weeks. At his oral argument, or at his hearing where he presents his testimony, the petitioner states he was detained for 10 or 11 days. Several years had passed. He wasn't trying to buttress his position by stating that it was a shorter period of time. But that's not the point of it. The point is, if you've been so tormented and put upon that you've been locked up by the authorities, one would think, in the normal world, maybe not in this world, in the immigration world, but one would think that you'd have a pretty decent idea of how long you'd been locked up. And three weeks versus less than two weeks is pretty significant, isn't it? I agree, Your Honor. However, on the record, the petitioner attempts to state he was detained for more than 10 days. He was not initially trying to state that he was – he was only – he was basically badgered by the immigration judge, and then he – He wasn't badgered. He was saying more than 10 days. He talks to you like lawyers talk to you all the time. It was more than 10 days. Well, was it – was it 30 or was it 20, or was it 6, or was it 12? And he – when he was asked how many was it actually, he said 11. Your Honor. Why is that badgering? Moving on to the other inconsistency that was noted, the petitioner's ability to recite verses of the Falun Gong chants. I mean, petitioner – just because the petitioner doesn't – isn't capable of performing exercises to the judge's satisfaction doesn't make him a non-devout petitioner. But the judge did say to him, let's go to the second exercise. There are five exercises, and there are motions, and there's something to recite with each of them. Is that right? Yes, Your Honor. He asked the petitioner, is that right? And the petitioner says, yeah. He says, do you agree with what I'm saying? The petitioner says, yeah, I agree with that. There are those things. Now, this is the guy who said that he had been participating for a long time in Falun Gong, that he'd actually read a number of books on Falun Gong. And then I said – Yes, Your Honor. He said, well, what about reciting a verse then from the second exercise? That's what you guys do, reciting. And he says, I don't know about that. Your Honor, he did recite – he did recite several verses. And if you – if, Your Honor, were to look at the transcript, there was some confusion on the part of the translator, the interpreter. At that point, started writing out the exercises. I was unable to secure a copy of the handwritten notes of the interpreter translator. But that translator did correct the record. He did go back to state that his initial determination, two hands, was incorrect. It really was 1,000 hands. And there are several instances of indiscernible testimony. I listened to the tapes myself with a native Mandarin speaker. And there were many instances where there were errors, potential errors in translation. And the record itself reflects indiscernible speaking. And now there are cases that say that even if somebody doesn't recall where a beating took place, I think it's the – Yeah, unless – do any of the panel members have additional questions? I'm sorry. All right. Then your time has expired. Thank you. Thank you, Your Honors. Good morning, Your Honors. Good morning. May it please the Court, I raise a memorandum on behalf of the respondent, Michael Mukasey. I think you can see where we're focused. I do. And just, you know, my concern is obviously from the standpoint of looking at our precedent, which, you know, sometimes is a bit difficult to get around. And I think almost maybe in some ways from my perspective defies how you common sense approach credibility. But Valerio Lopez, in that situation, you've got a petitioner that testified that first he had said it was – he hid for an hour, but then he says that he stayed out a whole night and the next day. And then there was a discrepancy of a full two years in an incident that happened three years ago. And he testified that it happened, you know, last year. In my view, those wouldn't be minor consistencies, but that particular case held that they were. They certainly seem, you know, how do I find this to be a major inconsistency from 11 days to 21 days when we're talking we've got a two-year and, you know, we've got that sort of discrepancy in our case law? How do I get around that? Well, I think in this testimony that I.J. was definitely trying to get a clear answer of when petitioner – or how the length of time petitioner was detained. I mean, he wasn't, as the opposing counsel says, badgering. In fact, the petitioner himself was confused in the one sentence in testimony on the record. But I guess what I – my focus here is how can 10 days be a major discrepancy when two years is considered a minor discrepancy in another case? Well, when the facts of this case were centered around basically just his detainment and then the only physical – one physical abuse, I think that those facts are very important. And if there's any discrepancy in those very limited instances, it wasn't like he was explaining that I was detained, you know, once this time, and it was this many days, and then another detainment. I mean, this was the only sort of harm he had experienced. And the I.J. had only that experience to go on. But how do you distinguish that from Velorio Lopez? I mean, in Velorio Lopez, that's what the petitioner was talking about, too, and he's got a two-year discrepancy, and he's got – you know, how do we – Well, I also – Why is this case different than Velorio Lopez? Well, in this case, also, the discrepancy – Are you familiar with Velorio Lopez? Somewhat, yes, Your Honor. But I say that this discrepancy matters more because this was the discrepancy between his written statement, which he had time to prepare, obviously, and then his oral testimony, which, you know, he – and then it was pointed out that you said in this written statement you were detained more than three weeks. It wasn't just three weeks. He said more than three weeks, where in his testimony he said, first, over 10 days, over a week, I think 11 days, all in one sentence. So that's how I would distinguish those two cases. However, I also would argue that the two other points – I'm still not hearing how is that – why two years isn't major and 10 days is. I mean, I don't think the length of time should be considered. I think it should be considered in the context of the rest of the testimony as well as the situation. Well, I guess if he was saying how long ago something happened, whether it was two – if there's a two-year discrepancy, is that different than when someone forgets about 10 days of when they're tortured? That's the – if I tell you, okay, an incident happened two years ago, is that – I mean, to me, that seems to be the only way, and I'm not sure it's distinguishable. Yeah, I mean, you've got to give me something here. I mean, I've got to – if you want me to find in your favor. Well, I can give you that the other – the other two findings were very strong on the IJ, and thus, even if you find error in that one, I think that none of the testimony supports that he had a credible testimony. Well, why were the other two discrepancies that the IJ focused on strong? I mean, one of them was, well, masterly, he either spoke to me or he didn't seem – and he had an explanation, well, he didn't really have to say anything. He got the treatment. Why is that a strong discrepancy? Why isn't that a minor inconsistency? Because that was showing to Bertrand's petitioner's facts that he knew about Falun Gong and he'd been practicing it, and that's why he was eventually harmed and detained. So I think that if he – and moreover, I mean, the written application we're overlooking was very clear. It said, I asked Master Li to treat me. Master Li said, I must learn Falun Gong. And then asked twice in the record, 148 and 158, did he speak to you? And he said, no, he did not speak to me. You mentioned the signed application also in trying to distinguish Valorio Lopez. So is it your position that where you have a signed application, signed under penalty of perjury, and then the oral testimony varies from that, but that's more significant than if you just have discrepancies within the oral testimony? And if so, why does that make a difference? I think any discrepancy matters, but I think when you have a length of time to prepare your asylum application and sort of write out what occurred to you, yeah, that's strong support. And you should – and also you're bringing that to the court and saying this is what I am attesting to occurred. And, I mean, you've read a lot of testimony during immigration court, and you know that they say, is this true, the facts in the asylum application? And the petitioner agrees, yes, it is. And so, in my opinion, it's strong support for the IJ that when he's not even close to the time period or not even close to the statement made in his asylum application, that's strong support for an adverse credibility finding. How about the petitioner's not knowing the second exercise? Now, we have a recent case, COSA, which indicates that there has to be something in the record that would say here's what the religion consists of. The IJ just can't rely on his own knowledge. Do we need to discount that discrepancy in light of COSA? No, I think it appears that maybe the IJ was assuming he knew about exercises, but really he asked a blank question that was, do you know the second exercise? And if you don't know, tell me. And the petitioner offered the information that he did not know. It wasn't as if the petitioner was on the stand and did the exercise, and the IJ speculated, oh, that's an incorrect exercise. He didn't even get to that point. He simply wanted to know, do you know that that occurs from 151 to 155? So I think in that instance, the IJ didn't speculate. He was simply taking from petitioner's testimony and going a little bit further to get information for himself, whether the facts as being told to him were true. The point petitioner makes, if I understand it correctly, is, well, how did the IJ know that he was supposed to know the words to that exercise? In other words, if the petitioner claimed to be a Christian and the IJ said, well, name the 12 apostles, and he couldn't, what's the basis for saying he should have known what the names of the 12 apostles were? Right, I think it was because the judge noted, actually, in his decision that he said he performed Fallen Dog exercises by himself and with groups two to three times a week in China and in his home and with friends in his home country. But he wasn't, I mean, after practicing so much, he still couldn't provide the exercises. And that's on page 48 of the IJ's decision, and 131, 148, and 151 of the record, where he testified. Are there any further questions? There don't appear to be other questions. Thank you. This matter now having been argued, and there are no further questions, it will stand submitted. Thank you. The next matter on calendar is Augusta Millender v. County of Los Angeles, case number 0755518.
judges: Fernandez, Callahan, Ikuta